**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TSYS Acquiring Solutions, LLC, | No. CV10-1060 PHX DGC |
| Plaintiff, | |
| vs. | **ORDER** |
| Electronic Payment Systems, LLC, | |
| Defendant. | |

Plaintiff/Counter-Defendant TSYS Acquiring Solutions, LLC's ("TSYS") has filed a motion to dismiss five of the seven counterclaims raised by Defendant/Counter-Claimant Electronic Payment Systems, LLC ("EPS"). Doc. 19, at 1. The motion is brought under Federal Rule of Civil Procedure 12(b)(6) and argues that EPS's Second, Fifth, Sixth, and Seventh counterclaims are barred by the economic loss doctrine, and that the Third counterclaim should be dismissed because the remedy it seeks is not available.[1] Doc. 19. For reasons stated below, the Court will grant the motion with respect to the Fifth and Sixth counterclaims and deny it with respect to the Second, Third, and Seventh counterclaims.

**I.     Background.**

EPS contracted for TSYS to provide credit card payment processing services for merchants whom EPS services. EPS alleges that the agreement between the parties called

---

[1] EPS's counterclaims at issue are as follows: Second – Breach of the covenant of good faith and fair dealing; Fifth – Conversion; Sixth – Fraud; and Seventh – Deceptive trade practices under the Arizona Consumer Fraud Protection Act, A.R.S. § 44-1522. Doc. 11, at 16-21.

for TSYS to install an exclusive 1-800 number onto merchant point-of-sale terminals. According to EPS, the exclusive number would permit EPS to move its merchant portfolio to another payment processing vendor easily, a need that it alleges was material to its decision to procure services from TSYS. EPS alleges that TSYS in fact connected EPS customers to at least three 1-800 numbers shared with other TSYS clients. After a confluence of events caused the parties to appear in arbitration, EPS alleges that the Arbitrator "granted EPS 'ownership, control, and access to the toll-free 1-800 number that connects EPS' merchants to a processor.'" Doc. 19, at 3. On May 4, 2010, Judge James Teilborg of this Court entered an Amended Judgment that confirmed the Arbitrator's award. Doc. 19, at 3.

TSYS subsequently filed this action to enjoin enforcement of the Arbitrator's award and Judge Teilborg's order. EPS raised seven counterclaims in response.

## II. Legal Standard.

Under Rule 12(b)(6), the factual allegations stated in an allegedly-defective complaint "are taken as true and construed in the light most favorable to the nonmoving party." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation and quotation marks omitted). Legal conclusions couched as factual allegations are not given a presumption of truthfulness. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

In the present motion, TSYS limits its arguments primarily to legal issues such as Arizona's economic loss doctrine and the feasibility of a constructive trust as a matter of law. Although factual disputes exist between the parties, these disputes are not relevant to deciding this motion.

## III. Motion to Dismiss on "Economic Loss" Grounds.

### A. Arizona's Economic Loss Doctrine.

The economic loss doctrine is used to determine whether a party to a contract should be limited to its contract remedies for the type of harm it suffered. *Flagstaff Affordable Housing Ltd. Partnership v. Design Alliance, Inc.*, 223 P.3d 664, 667 (Ariz. 2010). The rule "limit[s] a contracting party to contractual remedies for the recovery of economic losses

1  unaccompanied by physical injury to persons or other property." *Id*. The doctrine is not to
2  be construed broadly to all types of contracts, but rather is a narrow rule to be applied to
3  specific factual contexts. *Id*. at 669 ("the fact that the doctrine applies to product defects
4  [does not] necessarily establish that it should also apply to construction defects[;] [t]he
5  economic loss doctrine may vary in its application depending on context-specific policy
6  considerations"). Arizona has yet to apply the doctrine to cases in the credit card payment
7  processing industry. On this issue of first impression, the Court "must use [its] best judgment
8  to predict" how the state's highest court – in this case the Arizona Supreme Court – would
9  interpret the doctrine. *Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940
10 (9th Cir. 2004) (citation and internal quotations omitted).

11         In *Flagstaff*, the plaintiff property owner, Flagstaff Affordable Housing Ltd.
12 ("Owner"), contracted with the architecture firm Design Alliance, Inc. ("Architect") for the
13 design of "eight apartment buildings and a community center." *Flagstaff*, 223 P.3d at 665.
14 After the structures were completed, the U.S. Department of Housing and Urban
15 Development ("HUD") sued the Owner, alleging that the structures violated accessibility
16 guidelines required by the Fair Housing Act ("FHA"). The Owner settled with HUD and
17 sued the Architect in both contract and negligence for failing to design the structure in
18 accordance with the contract terms and the FAA. The Architect argued that the negligence
19 claim was barred by the economic loss doctrine. The Arizona Supreme Court agreed.

20         The Arizona Supreme Court likely would bring contracts of the type at issue in this
21 case under the economic loss doctrine. *Flagstaff* explains that "application of the economic
22 loss doctrine should rest on explicit consideration of . . . relevant tort and contract law
23 policies." *Id*. at 671 n.5. One such policy is to encourage parties to a commercial contract
24 to "prospectively allocate risk and identify remedies within their agreements." *Id*. at 670.
25 *Flagstaff* also suggests that the economic loss doctrine should bar tort causes of action in
26 cases where contract remedies are adequate. *Id* at 669 (noting that in construction defect
27 cases where the economic loss rule applies, "common law contract remedies provide an
28 adequate remedy because they allow recovery of the costs of remedying the defects . . . and

1  other damages reasonably foreseeable to the parties upon entering the contract").

2  In this case, both parties are commercial entities that have entered into one or more
3  agreements for credit card payment processing services.  EPS does not argue that it lacked
4  the sophistication to assess risks, negotiate the contract, or prospectively identify remedies
5  for breach.  Nor does it allege that breach of the contract was unforeseeable.  To the contrary,
6  EPS sought an exclusive 1-800 number precisely because of the possibility that TSYS would
7  not perform properly and EPS would be required to find another payment processing vendor.
8  Given the commercial nature of the contract, the fact that the parties anticipated a possible
9  breach, and the policy of encouraging parties to such contracts to allocate risk prospectively
10 and identify remedies within their agreements, the Court concludes that the type of contract
11 at issue in this case is subject to the economic loss doctrine.

12 This conclusion does not end the inquiry.  *Flagstaff* identifies two additional
13 principles that are relevant.  First, the economic loss rule notwithstanding, a plaintiff may
14 recover in tort if the defendant's breach of contract causes physical injury and related
15 economic harm or if the breach causes economic harm to interests other than those within the
16 scope of the contract.  *See id*. at 667, 671 (rejecting the interpretation that the economic loss
17 rule always requires the presence of physical injury).  Therefore, if a plaintiff suffered an
18 economic harm that was separate and distinct from the harm that would foreseeably result
19 from a party's mere failure to perform as the contract required, the plaintiff may recover
20 under tort theories that provide a remedy for such separate and distinct harm.  *See id.* ("The
21 principal function of the economic loss doctrine . . . is to . . . uphold the expectations of the
22 parties by limiting a plaintiff to contractual remedies for loss of the benefit of the bargain").
23 Second, even when the economic loss rule would preclude a given tort cause of action, that
24 preclusion can be nullified by contract terms that allow for recovery in tort.  *Id*. at 670-71
25 (noting that when the economic loss rule applies, a plaintiff "cannot recover in tort . . . unless
26 the contract otherwise provides").  The Court will consider these principles below when
27 addressing specific counterclaims at issue in this motion.

28

**B.     Second Counterclaim.**

In its Second Counterclaim, EPS alleges that TSYS promised to "provide a toll free, 1-800 number to EPS to enable EPS, among other things, to move their merchants to another processor if EPS so chose," as found by the Arbitrator. Doc. 11, at 12:20-25. EPS also alleges that by failing to fulfill its promise of providing the number, TSYS breached the covenant of good faith and fair dealing ("Covenant") and "prevented EPS from receiving the primary benefit of the parties' agreement." Doc. 11, at 16-17.

TSYS argues that insofar as EPS's Second Counterclaim sounds in tort it should be barred by the economic loss doctrine because the claim "go[es] to the heart of the performance of the Agreement." Doc. 19, at 5-6. But nothing in EPS's counterclaim requires this Court to interpret the claim as sounding in tort. EPS's prayer for relief does not seek punitive damages for breach of the Covenant, but only for TSYS's alleged violation of the Arizona Consumer Fraud Protection Act and for alleged "fraudulent misrepresentation and fraudulent concealment." Doc. 11, at 23. Construing EPS's Second Counterclaim as sounding in contract, the Court concludes that it is not barred by the economic loss doctrine. *See Firstar Metropolitan Bank & Trust v. FDIC*, 964 F. Supp. 1353, 1358 (D. Ariz. 1997) (refusing to dismiss a claim based on the breach of the implied covenant of good faith and fair dealing and allowing a claim for breach of the covenant in contract because "Plaintiff's Complaint is devoid of any indication that Plaintiff is seeking tort damages for breach of the implied covenant of good faith and fair dealing"); *accord Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28-29 (Ariz. 2002) ("[w]hen the remedy for breach of the covenant sounds in contract, it is not necessary for the complaining party to establish [the] special relationship" that would be required in a tortious violation of the covenant).

**C.     Fifth Counterclaim.**

EPS's Fifth Counterclaim alleges that EPS is the rightful owner of the EPS 1-800 number, that TSYS has failed to convey the number to EPS, and that TSYS therefore has committed the tort of conversion. Doc. 11, at 18-19. The tort of conversion consists of "[a]n

1  intentional exercise of dominion or control over a chattel which so seriously interferes with
2  the right of another to control it that the actor may justly be required to pay the other the full
3  value of the chattel." *Universal Mktg. and Entm't, Inc. v. Bank One of Arizona, N.A.*, 53
4  P.3d 191, 193 (Ariz. App. Div. 2002). TSYS argues that this tort claim should be barred by
5  the economic loss doctrine because the claim "go[es] to the heart of the performance of the
6  Agreement." Doc. 19, at 5-6. TSYS does not argue that the phone number is not a chattel
7  subject to a claim of conversion. Therefore, the only issue before the Court is whether EPS's
8  claim is subject to the economic loss rule.

9  EPS claims that TSYS failed to deliver that which their agreement called for: the
10 EPS 1-800 number. EPS was never in possession of the number and never exercised control
11 over it. If EPS were to receive the number, it would essentially receive that to which the
12 contract entitled it. EPS has not shown that a new type of harm flowed from TSYS's actions
13 after the Arbitrator and Judge Teilborg issued their respective judgments. Because the harm
14 alleged by the conversion counterclaim is the failure to receive the property or interest
15 promised by the parties' contract, and not some separate harm, the counterclaim is barred by
16 the economic loss rule. Accordingly, the Court will grant TSYS's motion to dismiss the Fifth
17 Counterclaim.

18 **D.   سixth Counterclaim.**

19 EPS alleges that TSYS failed to inform EPS that the 1-800 numbers were not unique
20 to EPS as required by the contract, that "EPS relied on the truth of TSYS' representation that
21 the EPS number was unique and had not been downloaded into non-EPS terminals," and that
22 the misrepresentations and omissions influenced "EPS to utilize and [continue] to utilize
23 TSYS' processing services." Doc. 11, at 19-20. EPS allegedly suffered consequential harms
24 such as "reduced value of its merchant portfolio as a result of not being able to move it to a
25 new processor freely and the expense involved in causing the removal of the EPS number
26 from non-EPS merchants terminals." Doc. 11, at 20.

27 The alleged harms, of course, arise directly from TSYS's failure to provide the benefit
28 of the parties' bargain – a readily transferrable 1-800 number. EPS has not argued that

1 contractual remedies would be inadequate to redress these injuries. Because EPS has not
2 alleged harms separate from those arising from breach of the contract, the economic loss
3 doctrine bars this tort claim.

4 EPS argues that the contract for the 1-800 number "is a verbal agreement and is silent
5 as to allocating risk or specifying remedies." Doc. 32, at 8. Assuming this is true, as the
6 Court must on this Rule 12(b)(6) motion, EPS still would not escape the economic loss rule
7 because it does not allege that the verbal agreement contained terms that allowed for
8 recovery in tort. *Flagstaff*, 223 P.3d at 670-71. Moreover, EPS does not allege fraud in the
9 inducement. It alleges only fraud in the performance of the contract, which caused the same
10 type of harm that was foreseeable in a breach. The economic loss doctrine bars this claim
11 and the Court will grant TSYS's motion to dismiss it.

12 **E.     Seventh Counterclaim.**

13 In its Seventh Counterclaim, EPS alleges that "TSYS misrepresented to EPS that the
14 number . . . would be unique to EPS merchants," that "TSYS intended to make such
15 misrepresentations . . . with the intent that EPS would rely on them," and that "EPS relied
16 on such misrepresentations . . . in obtaining processing services from TSYS." Doc. 11, at 20-
17 21. EPS also alleges that such conduct by TSYS violates the Arizona Consumer Fraud
18 Protection Act, A.R.S. § 44-1522 ("ACFPA"). Doc. 11, at 21.

19 TSYS argues that the economic loss doctrine should preclude a statutory fraud claim.
20 Doc. 19, at 1; Doc. 38, at 9. TSYS cites to *Werwinski v. Ford Motor Company*, 286 F.3d 661
21 (3d Cir. 2002), where the Third Circuit held that Pennsylvania's economic loss doctrine
22 barred plaintiffs' statutory fraud claim involving malfunctioning automobiles. *Werwinski*
23 does not address contracts of the kind involved in this case, nor does it touch on conduct
24 similar to the conduct alleged by EPS. The fact that some courts apply the economic loss
25 doctrine to some statutory fraud claims does not mean that the Arizona Supreme Court would
26 apply the doctrine to ACFPA under facts such as alleged here. Unlike the plaintiffs in
27 *Werwinski*, EPS alleges that TSYS made intentional affirmative misrepresentations in order
28 to obtain EPS's business, misrepresentations on which EPS relied in choosing TSYS as its

1    service provider. Unlike the "fraud in the performance" allegations in EPS's Sixth
2    Counterclaim, the Seventh Counterclaim alleges fraud in the inducement. The injury from
3    such fraud may well be separate from the injury caused by the contract's breach. The Court
4    will not dismiss EPS's Seventh Counterclaim.

5    **IV.     Motion to Dismiss Third Counterclaim.**

6    EPS's third counterclaim seeks compensation for "all of TSYS' unjust enrichment
7    from its use of EPS' number" for the period of time during which "TSYS has held the EPS
8    number in constructive trust for the benefit of EPS." Doc. 11, at 17-18. TSYS argues that
9    even though EPS alleged that it "owns" the EPS number, that allegation is invalid as a matter
10   of law because no one can own a 1-800 number. Doc. 19, at 8-9. TSYS relies in part on a
11   decision by the Federal Communication Commission ("FCC"), *In the Matter of Toll Free*
12   *Service Access Codes*, 20 F.C.C.R. 15089, 15090-91, 2005 WL 2138620 at *2 (F.C.C. Sept.
13   5, 2005), where the FCC stated: "Telephone numbers are a public resource and neither
14   carriers nor subscribers 'own' their telephone numbers. Courts have found that no one has
15   a property interest in a telephone number." If EPS cannot have a property interest in a 1-800
16   number, TSYS argues, then the number "cannot belong to EPS and cannot be the basis for
17   property subject to a constructive trust." Doc. 19, at 9.

18   The argument made by TSYS involves two issues: whether EPS can "own" the EPS
19   number and whether the number can be subject to a constructive trust. With regard to the
20   first issue, TSYS concedes that the Arbitrator "granted EPS 'ownership, control, and access
21   to the toll-free 1-800 number that connects EPS' merchants to a processor'" and that Judge
22   Teilborg entered an Amended Judgment confirming the Arbitrator's award. Doc. 19, at 3.
23   Whether TSYS may raise the ownership issue in this Court after failing to raise it before
24   Judge Teilborg and the Arbitrator is a question to be decided in this litigation. The Court will
25   not assume TSYS is correct on this issue for purposes of ruling on the motion to dismiss.

26   TSYS's constructive trust argument is unconvincing. Under Arizona law, "[a]
27   constructive trust is typically imposed when there is a *wrongful holding* of property which
28   unjustly enriches the defendant at the expense of the plaintiff." *Burch & Cracchiolo, P.A.*

*v. Pugliani*, 697 P.2d 674, 679 (Ariz. 1985) (emphasis in original). A constructive trust assumes the presence of a *res*, which is defined as "specific property . . . in which the claimant has an interest." *Amtitle Trust Co. v. Fitch*, 541 P.2d 1166, 1168 (Ariz. App. 1975). Assuming that EPS has an interest in the 1-800 number(s) at issue, the fact that the phone numbers are intangible does not preclude them from being deemed a *res* for purposes of a constructive trust, provided that they can be specifically identified. *See* Restatement (Third) of Torts § 55, cmt. g. As long as EPS can specifically identify the numbers after discovery, the numbers and proceeds derived from them may be subject to a constructive trust if EPS succeeds on the merits of its counterclaim. The motion to dismiss this claim will therefore be denied.

**IT IS ORDERED:**

1. TSYS's motion to dismiss (Doc. 19) is **granted in part** and **denied in part**. EPS's Fifth and Sixth counterclaims are dismissed.

2. The Court will set a Rule 16 Case Management Conference by separate order.

DATED this 29th day of September, 2010.

*David G. Campbell*
David G. Campbell
United States District Judge