1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7              **FOR THE DISTRICT OF ARIZONA**

8

9    TSYS Acquiring Solutions, LLC,        )    No. CV10-1060 PHX DGC
                                           )
10             Plaintiff,                  )
                                           )
11   vs.                                   )    **ORDER**
                                           )
12   Electronic Payment Systems, LLC,      )
                                           )
13             Defendant.                  )
     _____)

14

15          Defendant Electronic Payment Systems, LLC ("EPS") has moved for partial summary

16   judgment.  Doc. 40.  Plaintiff TSYS Acquiring Solutions, LLC ("TSYS") opposes the

17   motion.  Doc. 51.  The parties have fully briefed the motion, and the Court heard oral

18   argument on November 4, 2010.  For reasons stated below, the Court will grant the motion.

19   **I.      Background.**

20          EPS contracted for TSYS to provide credit card payment processing services for EPS

21   customers.  As part of the parties' contract, TSYS agreed to install an exclusive 1-800

22   number on the point-of-sale terminals of EPS's merchant customers.  EPS sought the

23   exclusive number because it would permit EPS to move its merchant portfolio to another

24   payment processing vendor if problems arose with TSYS, a need that was material to EPS's

25   decision to procure services from TSYS.  Disagreements between the parties ultimately led

26   to arbitration.  EPS claimed in the arbitration that TSYS had promised to provide it with the

27   exclusive 1-800 number and sought to recover the number in the arbitration proceeding.  The

28   arbitrator – retired Arizona Supreme Court Justice Robert Corcoran – agreed and ordered

1  "TSYS to provide EPS with immediate and continuous ownership, control, and access to the

2  toll-free 1-800 number that connects EPS' merchants to a processor."  Doc. 41-2 at 40.  The

3  arbitrator also awarded EPS more than $2,600,000 in damages.  *Id.*

4           On January 26, 2009, TSYS sought to vacate the arbitrator's award *in toto* by filing

5  a complaint in this Court that was assigned to Judge James A. Teilborg.  *See TSYS Acquiring*

6  *Solutions, LLC v. Electronic Payment Systems, LLC,* No. CV-09-0155-PHX-JAT.  The Court

7  will refer to the action before Judge Teilborg as "*TSYS I*."  Despite the fact that it sought to

8  have the arbitration agreement vacated in its entirety, TSYS focused its arguments before

9  Judge Teilborg primarily on the damages award.  On May 4, 2010, Judge Teilborg entered

10  an Amended Judgment that confirmed the arbitrator's award, granted summary judgment for

11  EPS, and dismissed TSYS's complaint.  The judgment included the arbitrator's order for

12  "TSYS to provide EPS with immediate and continuous ownership, control, and access to the

13  toll-free 1-800 number that connects EPS' merchants to a processor."  Doc. 41-24 at 27.

14           TSYS filed a motion under Rules 59 and 60 asking Judge Teilborg for permission to

15  file a supplemental or amended complaint.  The motion focused on the 1-800 portion of the

16  order and argued that TSYS and EPS disagreed on its meaning.  TSYS argued that it could

17  satisfy the order by providing EPS with any 1-800 number, regardless of whether it

18  connected any EPS merchants to a processor.  EPS claimed that it was entitled to the actual

19  1-800 number that connected its merchants to a processor.  TSYS noted in its motion that

20  there were, in fact, several 1-800 numbers that had been assigned to EPS merchants, that

21  other TSYS clients had also been assigned to these numbers, and that "by turning control of

22  these . . . numbers over to [EPS], [TSYS] would incur substantial costs, be subjected to

23  potential breach of contract claims, and the risk of potential security threats would arise."

24  *TSYS I*, 2010 WL 1781015 at \*5 (D. Ariz. May 4, 2010).  Judge Teilborg denied the motion

25  to inject these new arguments in the case, noting that they could have been raised before the

26  arbitrator and earlier in the case before Judge Teilborg and therefore did not constitute newly

27  discovered evidence.  *Id.*  Judge Teilborg also concluded that requiring TSYS to comply with

28  the order to surrender the numbers to EPS would not be manifestly unjust.  *Id.*

1    Ten days later, on May 14, 2010, TSYS filed this action to enjoin enforcement of the

2    arbitrator's award and Judge Teilborg's order.  TSYS makes arguments in this case which

3    Judge Teilborg declined to entertain in TSYS's motion under Rules 59 and 60.  TSYS asserts

4    that the 1-800 number awarded to EPS by the arbitrator does not exist, and that EPS's

5    merchants in fact are connected to TSYS through seven 1-800 numbers that are shared with

6    hundreds of thousands of non-EPS merchants.  TSYS argues that giving EPS control over

7    these numbers will put these third parties at risk and will cause TSYS to be in breach of its

8    other client contracts.

9    EPS's motion for summary judgment asserts that the TSYS complaint in this action

10   is barred by *res judicata*.  The Court agrees.

11   **II.    Legal Standards.**

12   A party seeking summary judgment "bears the initial responsibility of informing the

13   district court of the basis for its motion, and identifying those portions of [the record] which

14   it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.

15   Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed

16   in the light most favorable to the nonmoving party, shows "that there is no genuine issue as

17   to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

18   Civ. P. 56(c)(2).

19   In making their respective arguments regarding the res judicata effect of Judge

20   Teilborg's decision in *TSYS I*, both TSYS and EPS rely on federal res judicata principles.

21   These principles do not apply.  *TSYS I* was brought under federal diversity jurisdiction.  *See

22   TSYS I*, Doc. 1; *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 833 (9th Cir. 2004) ("It is

23   well established that even when a petition is brought under the Federal Arbitration Act

24   (FAA), a petitioner seeking to confirm or vacate an arbitration award in federal court must

25   establish an independent basis for federal jurisdiction.").  When seeking to determine the res

26   judicata effect of a judgment entered in a diversity-jurisdiction case, courts apply the law of

27   the state where the court which entered the judgment sits.  *Semtek Int'l Inc. v. Lockheed

28   Martin Corp.*, 531 U.S. 497, 507-508 (2001).  Judge Teilborg sits in Arizona, and the res

1  judicata effect of his judgment must therefore be determined under Arizona law. *Id*.

2  Under Arizona law, "[t]he doctrine of res judicata will preclude a claim when a former

3  judgment on the merits was rendered by a court of competent jurisdiction and the matter now

4  in issue between the same parties or their privities was, or might have been, determined in

5  the former action." *Hall v. Lalli*, 977 P.2d 776, 779 (Ariz. 1999). Arizona law does not

6  follow the transaction test applied in the federal cases cited by the parties. Rather, in

7  Arizona, "[t]wo causes of action which arise out of the same transaction or occurrence are

8  not the same for purposes of res judicata if proof of different or additional facts will be

9  required to establish them." *E.C. Garcia & Co. v. Arizona State Dept. of Revenue*, 875 P.2d

10  169, 179 (Ariz. App. 1993) (citing *Rousselle v. Jewett*, 421 P.2d 529 (Ariz. 1966)).[1]

11  **III.    Applying *Res Judicata* to This Case**.

12  Arizona law establishes four general requirements for res judicata: (1) the same claim

13  was adjudicated previously, (2) by a "judgment on the merits," (3) issued by "a court of

14  competent jurisdiction," (4) against the same parties or their privies. *See Hall*, 977 P.2d at

15  779. Only the first two elements are in dispute here.

16  **A.    Same Claim.**

17  In Arizona, two claims are not identical if "different or additional facts will be

18  required to establish them." *E.C. Garcia & Co.*, 875 P.2d at 179 (citing *Rousselle*, 421 P.2d

19  at 529). In this case, there is only one claim at issue: EPS's right to an exclusive 1-800

20  number that connects EPS merchants to a credit card processing provider. TSYS does not

21  dispute that the arbitrator found EPS was entitled to obtain such a number from TSYS, nor

22  that both the arbitrator and Judge Teilborg ordered TSYS to provide EPS with immediate

23

24  [1] The Court notes that the result would be the same in this case even if federal res judicata law were applied. The Court concludes *infra* that Arizona res judicata principles bar TSYS

25  from asserting defenses that could have been asserted before the arbitrator and Judge Teilborg. Federal law would support the same conclusion. *See Travelers Indemnity Co. v.*

26  *Bailey*, 129 S. Ct. 2195, 2205 (2009) (holding that res judicata applies "not only as to every

27  matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose" (internal quotation

28  marks and citation omitted)).

- 4 -

1   ownership, control, and access to the number.

2   TSYS instead argues that it is asking this Court only to "interpret" what the arbitrator
3   and Judge Teilborg meant when they ordered TSYS to give EPS the number.  But in
4   rendering this "interpretation," TSYS asks the Court to consider the following facts that were
5   in existence at the time of the arbitration and *TSYS I* but were never presented to the
6   arbitrator or Judge Teilborg:  (1) the complex nature of the debit/credit card processing
7   system; (2) that there are seven 1-800 numbers that connect EPS's merchants to a processor;
8   (3) that those same seven numbers are also being used to process transactions for over
9   515,000 non-EPS merchants; (4) that the numbers are controlled by organizations regulated
10  under federal law, not by TSYS; (5) that TSYS installed proprietary software on the credit
11  card machines of EPS merchants – information that will be compromised if EPS is given
12  control of the toll free numbers; and (6) that data security will be compromised for non-EPS
13  merchants and millions of debit and credit card holders if EPS is given control of the
14  numbers.  Doc. 51 at 13.

15  Contrary to TSYS's adamant argument, the Court's consideration of these facts would
16  not constitute an "interpretation" of what the arbitrator and Judge Teilborg meant in their
17  orders.  The Court could not determine what these judges meant by examining facts and
18  evidence they never considered.  More importantly, the plain import of these facts is that
19  TSYS cannot, or should not be required to, "provide EPS with immediate and continuous
20  ownership, control, and access to the toll free 1-800 number that connects EPS' merchants
21  to a processor" as ordered by the arbitrator and Judge Teilborg.  This is not a matter of
22  interpretation; it is a matter of defense.  TSYS is arguing that the relief sought by EPS and
23  ordered by the arbitrator and Judge Teilborg is impractical, impossible, or inequitable.
24  Impossibility of performance or its variant, commercial frustration, can be a defense to a
25  breach of contract claim or to a specific performance remedy.  *See, e.g., 7200 Scottsdale*
26  *Road Gen. Partners v. Kuhn Farm Mach.*, 909 P.2d 408, 346-47 (Ariz. App. 1995); *Marshick*
27  *v. Marshick*, 545 P.2d 436, 439-40 (Ariz. App. 1976).  Thus, it is a defense, not an
28  interpretation, that TSYS really seeks to assert in this case.

1  In Arizona, "a judgment in favor of a plaintiff is *res judicata* as against the defendant

2  on every defense raised *or which he could have raised* as a defense against the complaint."

3  *In re Kopely,* 767 P.2d 1181, 1183 (Ariz. App. 1988) (emphasis added); *accord Pettit v.*

4  *Pettit*, 189 P.3d 1102, 1106 (Ariz. App. 2008) (father barred by res judicata from asserting

5  paternity defense he could have asserted, but failed to assert, in marriage dissolution

6  proceeding); *see also Hall*, 977 P.2d at 779 (res judicata applies when "the matter now in

7  issue between the same parties or their privities was, or might have been, determined in the

8  former action"). TSYS seeks to assert an impossibility defense in this declaratory judgment

9  action – in the guise of "interpreting" the orders of the arbitrator and Judge Teilborg – that

10  plainly could have been asserted in the arbitration and *TSYS I*.

11  In sum, the "same claim" requirement of res judicata is satisfied. This case concerns

12  the same claim that was at issue in the arbitration and *TSYS I* – EPS's right to an exclusive

13  1-800 number that connects its merchants to a processor. TSYS is barred from raising

14  defenses to that claim that could have been asserted in the prior proceedings.

15  **B.    Final Judgment on the Merits.**

16  TSYS also argues that there was no final judgment on the matter it seeks to litigate

17  here. Doc. 51 at 16. TSYS cites to *In re Kopely*, 767 P.2d at 1183, for the proposition that

18  a judgment is not res judicata if the court "expressly states that it is not deciding an issue

19  which was raised and could have been decided." Doc. 51 at 16. TSYS argues that Judge

20  Teilborg expressly stated that he did not decide the issue asserted here, and that res judicata

21  therefore cannot bar its adjudication in this case. The Court disagrees.

22  When TSYS filed this action, EPS filed a motion asking Judge Teilborg to transfer

23  this case to him. Judge Teilborg declined, noting that EPS had not satisfied the requirements

24  of Local Rule of Civil Procedure 42.1. Judge Teilborg also provided this explanation as to

25  why transferring the case to him would not serve the purposes of judicial economy:

26       In any event, the Court does not find that the interests of judicial economy are
         best served by transferring the declaratory relief action to the undersigned.
27       The original action involved only whether the arbitration award should be
         vacated. Although the 1-800 number issue was raised in a post-judgment
28       motion, the Court did not have occasion to substantively resolve the issue, as

1
2
3

the Court was presented only with the issue of whether Rules 59 or 60 permitted an amended or supplemental complaint. Because the 1-800 number issue presents a different legal analysis than vacatur of the arbitration award, the Court does not believe that the interests of judicial economy are best served by transferring the declaratory judgment action to the undersigned.

4   *TSYS I*, Doc. 79 at 2.

5   This statement by Judge Teilborg does not fall within the *Kopely* exception to res

6   judicata.  As *Kopely* explained: "If a trial court or an appellate court expressly states that it

7   is not deciding an issue *which was raised and could have been decided*, the presumption

8   cannot prevail, and the judgment is not *res judicata* as to the undecided issue."  767 P.2d at

9   1183 (emphasis added).  As noted above, TSYS's impossibility defense was never raised

10   before the arbitrator or Judge Teilborg issued their orders.  TSYS sought to inject the defense

11   into Judge Teilborg's case subsequently through the motion under Rules 59 and 60, but Judge

12   Teilborg rejected the attempt.  His ruling on the motion is worth quoting at some length,

13   because it reinforces the Court's application of res judicata in this case:

14
15
16
17
18
19
20

[TSYS] asserts that the newly discovered evidence – namely, the disagreement between the parties concerning the meaning of the award of the 1-800 number – did not come to light until October 2009.  The Court disagrees.  The arbitrator issued his award in January 2009.  It is clear from the face of the award what the arbitrator ordered: that [TSYS] turn over control of the numbers that connect [EPS's] customers to a processor.  [TSYS] focuses on the word *the*, but misses the thrust of the arbitrator's finding and conclusion; namely, that [EPS] is to be awarded control over its merchants in the event [EPS] decides not to retain [TSYS's] services.  It was not the goal of the arbitrator, as mentioned throughout his award, to award [EPS] a single telephone number; rather, [EPS] was seeking ownership and control of the numbers its merchants use. . . .

21
22
23
24

[TSYS] may disagree with the award issued by the arbitrator, but attaching a new interpretation to the award hardly constitutes new evidence within the meaning of a Rule 59(e) motion.  At most, the parties have discovered a new disagreement, but not new evidence within the meaning of a Rule 59(e) motion.  Moreover, the Court fails to see why this issue was not raised with [TSYS's] original filing in January 2009; or at the very least, upon receiving [EPS's] February 2009 letter.  The Court finds that [TSYS] failed to present newly discovered or previously unavailable evidence such that Rule 59(e) relief is appropriate.

25

26   *TSYS I*, 2010 WL 1781015 at *5 (D. Ariz. May 4, 2010) (emphasis in original).

27   Judge Teilborg provided the following explanation in response to TSYS's argument

28   that it should be allowed to inject the impossibility defense into the case to avoid manifest

1  injustice:

2      [TSYS] argues that not granting it leave to file a supplemental complaint
       would work a manifest injustice, as the . . . numbers that [EPS's] merchants
3      use to connect to a processor are also used by other merchants besides [EPS's]
       customers.  Hence, [TSYS] asserts, by turning control of these . . . numbers
4      over to [EPS], [TSYS] would incur substantial costs, be subjected to potential
       breach of contract claims, and the risk of potential security threats would arise.
5      Again, it is not clear why these arguments and evidence in support were not
       raised both before the arbitrator and in [TSYS's] initial complaint to this
6      Court.  In essence, [TSYS] asks the Court to reconsider and re-weigh – should
       the Court allow a Rule 15 amendment – the consequences of the arbitrator's
7      award concerning the 1-800 number issue. . . .  Even if [TSYS] is subjected to
       substantial costs, breach of contract claims, and potential security threats as it
8      asserts, such results are the natural consequences of the arbitrator's award.  In
       the arbitration context, the Court cannot grant the type of relief [TSYS] is
9      ultimately seeking merely because the award will work a hardship for [TSYS].
       [TSYS's] complaints resulting from the arbitration award do not constitute
10     manifest injustice within the meaning of Rule 59(e).

11  *Id.* (emphasis added).

12      In summary, Judge Teilborg denied TSYS's post-judgment motion because TSYS

13  sought to inject a new issue into the case – the impossibility defense – that could have been

14  raised earlier but was not.  When Judge Teilborg subsequently declined to transfer the instant

15  case to him, and explained in the process that the issues in this case had not been considered

16  substantively by him, he was referring to the fact that TSYS failed to raise the issues in his

17  case and sought to inject them only in the post-judgment motion.  This clearly is not the

18  exception to res judicata discussed in *Kopely* – where a court expressly states that it is not

19  deciding an issue "which was raised and could have been decided."  767 P.2d at 1183.  To

20  the contrary, TSYS's impossibility defense was not raised in a timely manner before Judge

21  Teilborg and he therefore never addressed it.

22      In sum, a final judgment was entered by the arbitrator and Judge Teilborg on EPS's

23  claim for the 1-800 number.  Under Arizona law, res judicata bars TSYS from now raising

24  a defense to the claim that it could have raised in the arbitration proceeding and *TSYS I*.

25      **C.     The Applicability of Res Judicata.**

26      In addition to arguing that res judicata, if applied, would not bar its claim, TSYS also

27  contends that res judicata does not apply here because "[c]ourts consistently consider

28  declaratory judgment actions to interpret or clarify judgments," and that "res judicata does

- 8 -

1   not bar a party from seeking declaratory relief to interpret a court's confirmation of an

2   arbitration award." Doc. 51 at 7-8.  This argument fails because, as explained above, TSYS

3   does not seek an interpretation of the arbitrator's or Judge Teilborg's orders.  TSYS seeks

4   to present evidence never presented to the arbitrator and Judge Teilborg to show that their

5   judgments cannot or should not be enforced.

6         In addition, the legal authority cited by TSYS does not support its position.  TSYS

7   cites cases from states other than Arizona, chief among them *Sandler v. Casale*, 178 Cal.

8   Rptr. 265, 268 (App. 1981), and *Int'l Bhd. of Elec. Workers, Local Union 1547 v. City of*

9   *Ketchikan*, 805 P.2d 340, 343 (Alaska 1991).  These cases apply California and Alaska law,

10  respectively, and involve declaratory judgments to clarify terms in arbitration decisions, not

11  to collaterally attack those decisions and the judicial judgments that confirm them.

12  Therefore, they are not controlling in this case.

13        TSYS has cited no case for the proposition that, under Arizona law, a court judgment

14  that confirms an arbitration award would fall outside res judicata's reach within the context

15  of a declaratory action.   In fact, case law suggests that Arizona courts apply res judicata in

16  declaratory suits that seek to collaterally attack prior judgments.  *See Shattuck v. Shattuck*,

17  192 P.2d 229, 235 (Ariz. 1948) ("[Arizona's declaratory judgment statute] does not expressly

18  or by implication authorize a court to entertain a proceeding to determine any questions of

19  the construction or validity of a judgment or decree of a court of competent jurisdiction, or

20  to declare the rights or legal relations of interested parties thereunder"), *disapproved of on*

21  *other grounds by Marvin Johnson, P.C. v. Myers*, 907 P.2d 67 (Ariz. 1995); *accord*

22  *Schwamm v. Superior Court In and For Pima County*, 421 P.2d 913, 914 (Ariz. App. 1966)

23  (interpreting, *inter alia*, *Shattuck* as being rooted in "the general principle that persons who

24  have had an opportunity to litigate a matter should not be permitted to relitigate the same

25  matter in a different action").

26

27

28

1    **IV.      The Propriety of a Declaratory Action in this Context.**

2          The Court would be justified in dismissing TSYS's claim even if TSYS sought merely

3    to clarify Judge Teilborg's order.  The Federal Declaratory Judgment Act ("FDJA") states

4    that "[i]n a case of actual controversy within its jurisdiction [with noted exceptions] . . . any

5    court of the United States . . . *may* declare the rights and other legal relations of any

6    interested party seeking such declaration, whether or not further relief is or could be sought."

7    28 U.S.C. § 2201(a) (emphasis added).  In a diversity case, *Wilton v. Seven Falls Co.*,

8    515 U.S. 277, 288 (1995), the United States Supreme Court concluded that the FDJA

9    "created an opportunity, rather than a duty, to grant a new form of relief to qualifying

10   litigants."  The Court added that "a district court is authorized, in the sound exercise of its

11   discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after

12   all arguments have drawn to a close."  *Id.*  Factors to consider when exercising discretion to

13   dismiss include the futility of the action, the existence of parallel proceedings that permit the

14   "ventilation" of the issues, avoiding duplicative litigation, avoiding forum shopping and

15   procedural  fencing,  and  other  considerations  of  "practicality  and  wise  judicial

16   administration."[2]  *Wilton*, 515 U.S. at 288; *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491,

17   494-95 (1942); *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802-04 (9th Cir.

18   2002); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 & n.5 (9th Cir. 1998) (en

19   banc).

20         In this case, parallel proceedings are being conducted before Judge Teilborg to

21   enforce his judgment (*TSYS I*, Doc. 63), and TSYS can raise the present considerations in

22   that proceeding as a means of arguing that it is not violating the judgment.  Thus, this Court

23

24   [2] Though the Supreme Court referred to the existence of parallel state proceedings in *Wilton*,
     515 U.S. at 290, the existence of parallel federal proceedings in the same district would have
25   the same "parallel litigation" effect in light of judicial economy concerns noted in *Wilton*.
     Moreover, Ninth Circuit law permits a district court to dismiss a declaratory claim even if
26   parallel state proceedings do not exist.  *E.g.*, *Huth v. Hartford Ins. Co. of the Midwest*, 298
     F.3d 800 (9th Cir. 2002).   *Wilton* also noted that it was not "delineat[ing] the outer
27   boundaries of that discretion in other cases, for example, cases raising issues of federal law."
28   *Wilton*, 515 U.S. at 290.

1   would dismiss TSYS's declaratory judgment request even it is was limited to interpreting

2   Judge Teilborg's order.

3   **IT IS ORDERED**:

4       1.      EPS's motion for summary judgment (Doc. 40) is **granted**.

5       2.      The   Rule   16   Case   Management   Conference   current   set   for

6             **November 12, 2010 at 4:00 p.m.** is **vacated** and **reset** to **December 21, 2010**

7             **at 4:30 p.m.**  to address EPS's remaining counterclaims.

8   DATED this 9th day of November, 2010.

David G. Campbell
United States District Judge

- 11 -